# EXHIBIT 1

 **Wolters Kluwer**

## Service of Process Transmittal Summary

**TO:**    Tammy Matter
West Bend Mutual Insurance Company
1900 S 18TH AVE
WEST BEND, WI 53095-9791

**RE:**    **Process Served in Minnesota**

**FOR:**    West Bend Mutual Insurance Company  (Domestic State: WI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Max Gray Construction, Inc. and Cincinnati Insurance Companies vs. West Bend Mutual Insurance |
| **CASE #:** | None Specified |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, Inc., Saint Paul, MN |
| **DATE/METHOD OF SERVICE:** | By Process Server on 05/01/2023 at 12:13 |
| **JURISDICTION SERVED:** | Minnesota |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air |
| | Image SOP |
| | Email Notification,  Tammy Matter  tmatter@wbmi.com |
| | Email Notification,  Legal Department  legallawsuits@wbmi.com |
| | Email Notification,  Ryan Lucka  rlucka@wbmi.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System, Inc.<br>1010 Dale Street N<br>Saint Paul, MN 55117<br>866-539-8692<br>CorporationTeam@wolterskluwer.com |
| **REMARKS:** | The original document received has a poor image quality |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



## PROCESS SERVER DELIVERY DETAILS

**Date:**                          Mon, May 1, 2023
**Server Name:**                   Drop Service

| Entity Served | WEST BEND MUTUAL INSURANCE |
|---|---|
| Case Number | |
| Jurisdiction | MN |

| Inserts | | |
|---|---|---|
| | Poor Quality | |



STATE OF MINNESOTA                              DISTRICT COURT

COUNTY OF ST. LOUIS                        SIXTH JUDICIAL DISTRICT
                                        Case Type: Dec. Action/Civil Misc.

---

Max Gray Construction, Inc. and           Court File No.
Cincinnati Insurance Companies             Judge:
                                           To Be Tried in the City of Hibbing

      Plaintiffs,

v.

West Bend Mutual Insurance, Louhi & Kivela
Masonry, Thomas Breiwick and
AmTrust North America,

      Defendants.

---

## SUMMONS

---

TO:   Defendants above-named:

1. **YOU ARE BEING SUED**. The Plaintiffs have started a lawsuit against you. The Plaintiffs' Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY** WITHIN 21 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this Summons a written response called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

                TRIAL GROUP NORTH
                800 Lonsdale Building
                302 West Superior Street
                Duluth, MN 55802

3. **YOU MUST RESPOND TO EACH CLAIM**. The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: April 11, 2023                         TRIAL GROUP NORTH, PLLP

---

Steven Reyelts    #91017
800 Lonsdale Building
302   West   Superior
Street   Duluth,   MN
55802
218-722-0073
*reyelts@trialgroupnorth.com*
*Attorneys for Plaintiffs*

2

STATE OF MINNESOTA

COUNTY OF ST. LOUIS

DISTRICT COURT

SIXTH JUDICIAL DISTRICT
Case Type:  Dec. Action/Civil Misc.

---

Max Gray Construction, Inc. and
Cincinnati Insurance Companies

      Plaintiffs,

v.

West Bend Mutual Insurance, Louhi & Kivela
Masonry, Thomas Breiwick and
AmTrust North America,

      Defendants.

Court File No.
Judge:
To Be Tried in the City of Hibbing

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

      Plaintiff Max Gray Construction Inc. (hereafter "Plaintiff Max Gray" or "Max Gray") and Plaintiff Cincinnati Insurance Company (hereafter "Plaintiff Cincinnati" or "Cincinnati") by and through their counsel Trial Group North, and for their Complaint for declaratory judgment under Minn. Stat. § 555.02 state and allege as follows:

### NATURE OF THE ACTION

1.     This is an insurance coverage action seeking declaratory relief pursuant to Minn. Stat. §555.02. Plaintiffs seek a determination that West Bend Mutual Insurance (hereafter "West Bend") has a duty to defend or indemnify Plaintiffs under West Bend's policy with Louhi & Kivela Masonry (hereafter "L&K") (Policy Nos. 1327705 and 1331363, hereafter "the Policy") with respect to an underlying claim made by Thomas Breiwick (hereafter "Breiwick" and the "Breiwick claim").   In relevant part, the Breiwick claim stems from a slip and fall. L&K was subcontracted by Max Gray, for a project renovating

the Hibbing Community College. On March 14, 2019, an L&K employee, Thomas Breiwick, slipped on ice/snow and sustained injuries at 1515 East 25th Street, Hibbing, MN. A copy of Breiwick's Complaint in Minnesota District Court (Case No. 69HI-CV-21-374) is attached hereto as Exhibit A. In a contract between Max Gray and L&K, dated December 20, 2017, L&K promised to indemnify and hold harmless Max Gray for claims arising out of or resulting in the performance of L&K's work. A copy of the contract is attached hereto as Exhibit B. A copy of Cincinnati's Insurance Company's January 26, 2021 notice of tender, sent by Tanner Locke, is attached as Exhibit C. A copy of West Bend's denial of tender, sent on February 8, 2021, by its Attorney Joseph J. Sarmiento, is attached as Exhibit D. A copy of Cincinnati's Insurance Company's March 18, 2022, notice of renewed tender, sent by Attorney Steven Reyelts, is attached as Exhibit E. A copy of West Bend's denial of renewed tender, sent on August 1, 2022, by its Attorney Joseph J. Sarmiento, is attached as Exhibit F.

Defendant Thomas Breiwick has received Workers' Compensation Benefits from Defendant AmTrust North America in the amount of $274,837.76.

## JURISDICTION AND VENUE

2.　　Jurisdiction and Venue are proper in this judicial district as claimant Thomas Breiwick resides in Hibbing, Minnesota.

## PARTIES

3.　　Plaintiff Max Gray, at all times relevant hereto, is a Minnesota corporation which contracts on projects throughout Minnesota.

4.　　Plaintiff Cincinnati Insurance Companies has issued an insurance policy covering Plaintiff Max Gray.

5.　　Defendant West Bend has issued insurance policies covering Defendant Louhi & Kivela.

6.　　Defendant Louhi & Kivela Masonry is a Minnesota corporation.

2

7.    Claimant Thomas Breiwick is a resident of the state of Minnesota.

8.    Defendant AmTrust North American is the Workers' Compensation carrier for Defendant Louhi & Kivela Masonry.

**BACKGROUND**

9.    In the underlying *Breiwick* claim, the prayer for relief seeks an amount in excess of $50,000.00.

10.    West Bend issued an insurance policy to L&K with coverage for general liability.

11.    West Bend covered Defendant L&K under Policies #1327705 and #1331363.

12.    Plaintiffs tendered the claim to West Bend on January 26, 2021, in accordance with the terms of the Policies.

13.    In the letter dated August 1, 2022, West Bend asserts two issues which impact coverage for Plaintiffs on the Breiwick claim. First, West Bend asserts there is no additional insured coverage for Plaintiffs, and asserts Max Gray was not required to be added as an additional insured. Second, West Bend asserts Defendant L&K has no indemnify obligations to Plaintiff Max Gray for Max Gray's negligence and does not believe there is an issue of L&K's negligence.

**COUNT I – DECLARATORY JUDGMENT**

14.    Plaintiffs reallege and reincorporate each and every Paragraph of this Complaint for a Declaratory Judgment.

15.    There is a genuine and bona fide dispute and an actual controversy and disagreement between Plaintiffs and West Bend regarding whether West Bend has a duty to defend and indemnify Plaintiffs against the Breiwick claim.

16.    Pursuant to Minn. Stat. § 555.02, Plaintiffs in good faith request that the Court declare the following:

(a)     West Bend has a duty to defend or indemnify Plaintiffs in connection with the claims asserted in the Breiwick claim because Plaintiffs fulfilled their duties according to the Policy issued by West Bend in connection to the contract with L&K and no exclusions to coverage apply to the Breiwick claim.

(b)     Specifically, West Bend has a duty to defend or indemnify Plaintiffs in connection with the claims asserted in the Breiwick claim because the contract between Max Gray and L&K required L&K to name Max Gray as an additional insured for the project. Under the terms of the subcontract agreement, Max Gray is an additional insured under the L&K Policy on a primary, non-contributory bases, which requires full indemnification.

(c)     Additionally, the Certificate of Liability Insurance lists Max Gray as an additional insured under the L&K policy on a primary, non-contributory bases, which waiver of subrogation applies on general liability and worker's compensation.

(d)     Finally, West Bend has a duty to defend or indemnify Plaintiffs in connection with the claims asserted in the Breiwick claim because Mr. Breiwick's actions which resulted in his alleged injury resulted from the instructions of his L&K supervisor, and in Breiwick's claims he alleges L&K is negligent as a Defendant. Mr. Breiwick's allegations trigger coverage for Plaintiffs under the Additional Insured Contractors Blanket endorsement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the Court issue an Order as follows:

A.      Declaring that Defendant West Bend has a duty to defend and indemnify Plaintiffs in connection with any claims asserted in the Breiwick claim;

4

B.      Awarding Plaintiffs their costs and disbursements and attorneys' fees incurred in conjunction with this matter; and

C.      Awarding such other and further relief as the Court deems just and equitable.

Dated: April 11, 2023                           TRIAL GROUP NORTH, PLLP

                                                _____
                                                Steven Reyelts      #91017
                                                800 Lonsdale Building
                                                302 West Superior Street
                                                Duluth, MN 55802
                                                218-722-0073
                                                *reyelts@trialgroupnorth.com*
                                                *Attorneys for Plaintiffs*

## ACKNOWLEDGMENT

The Plaintiffs hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. §549.211 to the party against whom the allegations in this pleading are asserted.

Dated: April 11, 2023                           TRIAL GROUP NORTH, PLLP

                                                _____
                                                Steven Reyelts      #91017
                                                800 Lonsdale Building
                                                302 West Superior Street
                                                Duluth, MN 55802
                                                218-722-0073
                                                *reyelts@trialgroupnorth.com*
                                                *Attorneys for Plaintiffs*

STATE OF MINNESOTA                                        DISTRICT COURT

COUNTY OF ST. LOUIS                                  SIXTH JUDICIAL DISTRICT

Case Type: Personal Injury
Court File No.:

Thomas Breiwick,

     Plaintiff,

vs.                                                                    **COMPLAINT**

Hibbing Community College,

and

Max Gray Construction, Inc.,                         To Be Tried in the City

     Defendants.                                              Of Hibbing

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANTS:

     Plaintiff, for his claim for relief states and alleges that:

I.

     On or about March 14, 2019, Plaintiff was working on a construction site at Hibbing Community College, under the direction of contractor Max Gray Construction, Inc., when he slipped on a snow-covered plastic tarp that was covering plywood pallets. Plaintiff struck the ground, landing on his tailbone, lower back, and buttock area. This fall resulted in injuries to his low back with lower extremity radiculopathy, groin, hips, knees, and feet, as well as hernia formation. As a result of the injuries sustained in the fall, Plaintiff is unable to work and continues to suffer from immense physical and mental pain and suffering.

II.

     That, these injuries were a direct result of Defendants' inattention, carelessness, and negligence – particularly regarding the maintenance and supervision of the snow-covered tarp covering the aforementioned pallets.

**Exhibit A**

### III.

That, as a result of the wrongful and negligent acts of the Defendants, Plaintiff was caused to suffer, and will continue to suffer in the future, loss of consortium, affection, assistance, and conjugal fellowship, all to the detriment of his marital relationship.

### IV.

That, as a result of negligence of Defendants Hibbing Community College and Max Gray Construction, Inc., Plaintiff sustained injuries and was otherwise severely and permanently injured, satisfying the thresholds set forth at Minn. Stat. Section 65B.51, Subd. 3; has in the past and will in the future incur medical and chiropractic expenses for the treatment of his injuries; has in the past and will in the future incur a loss of earnings and earning capacity; has in the past and will in the future suffer physical and mental pain; and, has been thereby damaged and injured in an amount greater than $50,000.00.

WHEREFORE, Thomas Breiwick demands judgment, jointly and severally, against Defendants Hibbing Community College and Max Gray Construction, Inc., as follows:

1. Plaintiff demands judgment against Defendants in an amount greater than Fifty Thousand Dollars ($50,000.00).

2. For all applicable interest, costs, disbursements and attorneys' fees incurred herein.

3. For such further relief as the Court deems just and equitable.

*SIGNATURE PAGE FOLLOWS*

Dated: January 11, 2021

By: /s/Joseph P. Pope
Joseph P. Pope, #0400472

/s/Kristin L. Longley
Kristin L. Longley, #0321540

**Longley & Pope Law, PLLC**
Attorneys for Plaintiff
100 North Sixth Street
Suite 630B
Minneapolis, MN 55403
(612) 353-4804
pope@longleypope.com
longley@longleypope.com



# MAX GRAY CONSTRUCTION, INC.

### GENERAL CONTRACTORS
2501 5th Avenue West
P.O. Box 689
Hibbing, MN 55746
(218) 262-6622   Fax (218) 262-8901

## SUBCONTRACT NO.: 1305

12/20/2017

LOUHI & KIVELA MASONRY

4074 N SALMI ROAD

HIBBING MN 55746

| | |
|---|---|
| Contractors Job No: | 1749-00 |
| Job Name: | HCC Renovation & Rightsizing |
| Phase Number: | 04 2000 |

Owner:   MN State Colleges & Universities
Location of Work:   HCC - 1515 East 25th Street
Hibbing, MN 55746

Max Gray Construction, Inc., herein called "Contractor," and the above named Subcontractor, herein called Subcontractor, hereby agree that the portion of the Principal Contract work below specified shall be performed by Subcontractor in accordance with the provisions hereinafter stated, including the General Terms and Conditions attached hereto, which by this reference are incorporated herein.

1. (a) Work to be performed: Bid Package #2  Masonry - Complete

(b) Plans, drawings, specifications: Prepared by RRTL Architects.  Plans Volumes 1 and 2 dated October 18, 2017.  Specification Volume 1 dated October 18, 2017, Volume 2 dated October 18, 2017. Addendum #1 dated 11/16/2017, Addendum #2 dated 11/17/2017, Addendum #3 dated 11/29/2017.

2. Items to be furnished by Contractor:  As per plans and specifications, as necessary to complete work, as site and project conditions dictate and as per all requirements of this subcontract.

**Submit required submittals as per specification.  Subject to Architects, Engineers, Owner's and MGC approval.**

3. Time of Commencement and Completion: Time is of the essence.  Commence, prosecute and complete all work as scheduled by the General Contractor.

4. Compensation:  All labor, material, equipment and tax complete, all as described in 1(a) for the lump **sum of $322,295.00 (three hundred twenty two thousand two hundred ninety five dollars)**

Exhibit B

Subcontract No..   0                               page 2 (con't)

HCC Renovation & Rightsizing          MGC Job #   1749-00       Phase: 04 2000

Terms of Payment:  As per this contract and specifications.  Invoices are to be received in our office by the 25th of each month.   5% retainage will be held until final completion.  Monthly  progress payments shall be made to subcontractor within 10 days of MGC receipt of payment from Owner, which receipt constitutes both a condition precedent to MGC's payment obligation and exclusive source for payment to subcontractor.

5.   Insurance Required:  A certificate of insurance must be received in our office prior to the start of work and before payment will be made.  The Certificate should include all of the following:
   - Max Gray Construction, Inc. is to be named as an additional insured on a Primary basis for ongoing and completed operations on ISO forms CG 2010 0704 and CG 2037 0704 (or substitute forms that are equivalent)
   - General Liability coverage with minimum limits of $1,000,000 per occurrence / $2,000,000 aggregate, including a per project General Aggregate limit.
   - A waiver of subrogation in favor of Max Gray Construction, Inc.
   - Auto Liability limits shall be written with a minimum of $1,000,000 combined single limit.
   - Worker's Compensation and Employer's Liability minimum limits shall be no less than $500,000 / $500,000 / $500,000.
   - These insurance requirements shall be maintained for a minimum of 2 years after completion of the project.

5a. Umbrella Liability or Excess Liability limit shall be included with a minimum limit of $1,000,000.

**INDEMNIFICATION**
5b. The Work performed by the Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from Contractor), affiliated companies of Contractor, their partners, joint ventures, representatives, members, designees, officers, directors, shareholders, employees, agents, successors, and assigns (Indemnified Parties),from and against any and all claims for bodily injury, death or damage to property, demands, damages, actions, causes of action, suits, losses, judgments, obligations and any liabilities, costs and expenses (including but not limited to investigative and repair costs, attorneys' fees and costs, and consultants' fees and costs) ("Claims") which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any acts or omissions, negligent or willful misconduct of Subcontractor, its employees or agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

These are the minimum limits required and are subject to change at the discretion of Max Gray Construction Inc. and the owner of the project, depending on said project.

Subcontract No.:  0  page 3 (con't)

HCC Renovation & Rightsizing  MGC Job #  1749-00  Phase: 04 2000

6.  Special Provisions:

1.  Any and all extras must be approved in advance in writing.
2.  No payments will be made without returned signed Subcontract and Certificate of Insurance.
3.  Division 00 (Bidding & Contract Requirements) and Div. 1 (Gen. Requirements) apply to all Subcontractors.
4.  All work must be done in a safe, workmanlike manner & comply with all OSHA standards.
5.  Any lower tier subcontractor shall be named and will be subject to MAX GRAY CONSTRUCTION, INC., approval and shall provide MAX GRAY CONSTRUCTION, INC., with a Certificate of Insurance.
6.  The Subcontractors shall supervise their employees & be responsible for all clean-up of Subcontractor's work.
7.  All Subcontractor debris shall be removed from site on a daily basis.
8.  Subcontractor shall be responsible for storage of Subcontractor's material on-site, or in transit (protection, damage, theft, and etc.).
9.  Subcontract "General Terms and Conditions" (white sheet-attached) are a part of this contract. If not attached, notify our office immediately."
10. Each individual Subcontractor is responsible for procurement and payment of any required permits, fees, etc.
11. MGC will not provide dumpster service or debris removal without prior written agreement. Unauthorized dumpster use will be backcharged accordingly.
12. MGC reserves the right to make special methods of payment including but not limited to joint checks.
13. Lien Waivers must be provided from you and your lower tier Subcontractors and Suppliers for each previous payment before additional payments will be released.
14. Each payment request must be accompanied by a completed Application for Payment and Lien Waiver form.
15. All punch list items are to be completed as soon as possible.
16. Final payment will not be released until after all close-out information and punch list items are complete and accepted by Architect, Owner, and MGC; and final payment has been received by MGC.
17. Per OSHA regulation Subcontractor Safety Policy must be available at the site while work is being performed.

18. Performance and Payment Bonds are required.
19. MN Prevailing Wage applies to this project. The use of
MN Prevailing Wage Part 1 and Part 2 Statement of Compliance is
mandatory. Certified Payroll Reports are due weekly to MGC.
20. Jobs Reporting Vendor form must be submitted with the Application for Payment.
21. IC 134 is to be submitted to the State of MN when your scope of work is completed.

IN WITNESS WHEREOF, the parties hereto have executed this Subcontract the day and year first above written.
CONTRACTOR:  SUBCONTRACTOR:

**MAX GRAY CONSTRUCTION, INC.**  LOUHI & KIVELA MASONRY

By _____  By _____
Title  Title

White - Subcontractor copy  Green - Return to MGC

SECTION 00 41 13

MINNESOTA STATE COLLEGES AND UNIVERSITIES

BID FORM

BID OPENING TIME: 2:00 PM local time

BID OPENING DATE:

12/13/2017

SUBMITTED BY: _Louhi & Kivela Masonry Inc._
Company Name – Hereinafter referred to as the "Bidder"

ARE YOU A CERTIFIED, TARGETED GROUP PRIME CONTRACT BIDDER?          Yes x No

ARE YOU A CERTIFIED, ECONOMICALLY DISADVANTAGED PRIME CONTRACT BIDDER?     Yes x No

ARE YOU A CERTIFIED, VETERAN-OWNED PRIME CONTRACT BIDDER?          Yes x No

## BID FOR CONTRACT WORK

(1)   We, the undersigned, being familiar with the local conditions affecting the cost of the Work and with the Contract Documents, including the Advertisement for Bids, Bid Form, General Conditions of the Contract for Construction as amended therein, Special Conditions, Drawings, Specifications and Addenda Numbers **1, 2, 3**          , on file in the Office of:

Max Gray Construction Inc.
2501 5t Avenue West
Hibbing, MN 55746

and in accordance with the provisions thereof, hereby proposes to furnish all labor, materials, equipment, and services necessary for the following Project:

Max Gray Construction Inc
C/0 Hibbing Community College
Rightsizing and Renovation Project
1515 East 25th Street
Hibbing, MN 55746

SECTION 00 4113

MINNESOTA STATE COLLEGES AND UNIVERSITIES

**Base Bid:** Having examined the Place of the Work and all matters referred to in the Instruction to Bidders and the Contract Documents prepared by Rafferty Rafferty Tollefson Lindeke Architects, Inc. for the above mentioned project, we the undersigned, hereby offer to enter into a contract to perform the Work for the Sum of:

(Please indicate the Bid Package No. and use separate envelope and bid form, and bid security for each Bid Package)

Bid package No **2 Masonry**

Three hundred twenty two thousand two _____Dollars
hundred ninety five and 00/100 dollars

( $ 322,295.00 _ _ _ ), in lawful money of the United States of America.

Site work bid package must also include unit pricing details bound in the specification.

| | | |
|---|---|---|
| Unit Price No. 1 | Excavation | $_____ |
| Unit Price No. 2 | Engineered Fill | $_____ |
| Unit Price No. 3 | Hourly rate for allowances in bid packages 4,7,10,14 | $_____ |

Schedule of Alternate Bids/Add to Base Bid:

| | |
|---|---|
| Add Alternate No. 1 | $ 4,000.00 |
| Add Alternate No. 2 | $_____ |
| Add Alternate No. 3 | $_____ |
| Add Alternate No. 4 | $_____ |
| Add Alternate No. 5 | $_____ |

**Contract Time:**

Bidder agrees to commence the work after a "Notice to Proceed" has been issued by Max Gray Construction, Inc. and to substantially complete the work based on the specified milestone schedule.

**Bid Security:**

Each bid which totals over $50,000.00 shall be accompanied by a certified check, payable to Max Gray Construction, Inc., in the sum of not less than 5% of the total base bid; or a corporate surety bond of a surety company duly authorized to do business in the state of Minnesota in the same amount; which is submitted as bid security, conditioned upon the Bidder entering into a contract with Max Gray Construction in accordance with the terms of the bid. It is agreed that bid security will constitute liquidated damages, and not a penalty, for the failure or refusal of the successful Bidder to execute and deliver the Owner-Contractor Agreement, in a correct form, within ten (10) days after receipt.

**Performance/Payment Bond:**

Bid Package bidders shall include the cost of a Performance Bond and Payment bond in their bid package.

**Acceptance:**

This offer shall be open to acceptance and is irrevocable for (90) ninety days from the bid closing date.

If this bid is accepted by Construction Manager / Owner within the time period stated above, we will:

1. Execute the Agreement within ten days of receipt of Notice of Award
2. Furnish the required bonds within ten days of receipt of Notice of Award.
3. Commence work within seven days after written Notice to proceed of this bid.

If this bid is accepted within the time stated and we fail to commence the Work or we fail to provide the required Bond(s), the security deposit shall be forfeited as damages to Construction Manager by reason of our failure.

In the event our bid is not accepted within the time stated above, the required security deposit shall be returned to the undersigned, in accordance with the provisions of the Instructions to Bidders; unless a mutually satisfactory arrangement is made for its retention and validity for an extended period of time.

**Construction Manager / Owner's Right to Reject:**

In submitting this Bid, the Bidder understands that the right is reserved by the Construction Manager Owner to reject any and all Bids and to waive any informalities and irregularities in the Bids received and to accept the Bid, which in the Construction Manager IOwner's judgment, is in the Owner's own best Interests.

**Bid Form Signature (s)**      Michael Louhi  CFO

_____

Print Name and Title

Louhi & Kivela Masonry Inc.
Bidder   Print Company Name

_Signature_

Rev. 9/28/11                          Page 3 of 9

(2)    **PREFERENCE:** In accordance with M.S. 16C.16, the basis of award is that eligible certified targeted group (T.G.) prime Bidders will receive a six percent (6%) preference and certified economically disadvantaged (E.D.) prime Bidders will receive a four percent (4%) preference. Preference will only be allowed if the Bidder is certified prior to the scheduled bid opening. Both the targeted group (T.G.) preference and the economically disadvantaged (E.D.) preference are applied only to the first $500,000 of the bid. Preferences are not cumulative; the total percentage of preference granted on a contract may not exceed the highest percentage of preference allowed for that contract. Bidders interested in becoming a certified vendor or to verify their T.G. eligibility and certification or E.D. certification, should refer to the state of Minnesota, Department of Administration, Materials Management Division's website at www.mmd.admin.state.mn.us under "Vendor Information", or call the division's help line at (651) 296-2600. The Bidder shall designate their company's status in the spaces provided on this bid form.

In accordance with M.S. 16C.16 and 16C.19, eligible certified veteran-owned small businesses of which the principal place of business is in Minnesota will receive a 6 percent (6%) preference on the basis of award for this RFB. The preference is applied only to the first $500,000 of the bid. Preferences are not cumulative; the total percentage of preference granted on a contract may not exceed the highest percentage of preference allowed for that contract. Eligible veteran-owned small businesses include certified small businesses that are majority-owned and operated by a veteran and are certified by the United States Department of Veteran Affairs as a veteran-owned small business.

☐    Check this box if you are claiming the veteran's preference. Provide a screen print of the Department of Veterans Affairs website showing you are certified.

Eligible veteran-owned small businesses must be **currently** certified by the U.S. Department of Veterans Affairs prior to the solicitation opening date and time to receive the preference. Information regarding certification by the United States Department of Veterans Affairs may be found at http://www.vetbiz.gov .

Provide the applicable documentation above with your response. If you don't check the box above in Paragraph (2), or you don't provide the required documentation, you will not be considered for this preference.

(3)    ADDENDA ACKNOWLEDGEMENT: All Addenda shall become part of this bid and the Contract. As acknowledgement of this requirement, the Bidder shall insert the numbers of all Addenda included in this bid in the space provided in paragraph (1) on the first page of this bid form. Failure to list all Addenda issued shall be cause for rejection.

## SECTION 00 41 13

## MINNESOTA STATE COLLEGES AND UNIVERSITIES

(4)   ALTERATIONS/ERASURES: A bid form shall be rejected if it contains any alteration or erasure unless the alteration or erasure is corrected as herein provided. An alteration or erasure must be crossed out and the correction thereof printed in ink or typewritten adjacent to the alteration or erasure and initialed in ink by the person signing the bid.  Enter the bid and any alternate amounts in both written format and numerically.  In the event that any price used in determining the lowest responsible bid is in discrepancy, the written representation shall take precedence.

(5)   STATE OF INCORPORATION: For corporations, please list the state of incorporation: Minnesota

(6)   NAMES OF PARTNERS: For partnerships, please list the full names of the partners:

(7)   REJECTION OF BIDS/ BID WITHDRAWAL: In submitting this bid it is understood that the Owner reserves the right to reject any and all bids. It is agreed that this bid cannot be withdrawn until after thirty (30) calendar days have passed from the date of the bid opening if the Owner has not yet acted thereon.

(8)   ENCLOSURES: If the Specifications require the Bidder to submit catalogues, drawings, specifications, performance data, descriptive information of special equipment, or other items, the Bidder shall include the required items with the bid form.

(9)   TIME OF COMPLETION: The undersigned Bidder hereby affirms and states that, if awarded the Contract for said Project, Work will commence within 10 (ten) consecutive calendar days after the written Notice to Proceed and the entire Contract will be Substantially Complete by **December of 2018** as a condition of the Contract. We understand further, that the Contractor shall be assessed liquidated damages for each consecutive calendar day any Project Work component remains incomplete after the required date(s) of completion. Contract processing delays by the Bidder shall not extend the Time of Completion.

(10)  CERTIFICATE OF COMPLIANCE: REQUIRED FOR BIDS SUBMITTED IN EXCESS OF $100,000.00

BIDDERS ARE CAUTIONED TO READ CLOSELY THE SECTION LISTED ELSEWHERE IN THE BIDDING DOCUMENTS TITLED, "NOTICE TO BIDDERS - AFFIRMATIVE ACTION CERTIFICATE OF COMPLIANCE." THE BIDDER SHALL COMPLETE THE FOLLOWING INFORMATION. FAILURE TO DO SO MAY RESULT IN REJECTION OF THE BID.

1.   Have you employed more than 40 full-time employees within Minnesota on a single working day during the previous 12 months?

_____ YES     _x_ NO

## SECTION 00 41 13

## MINNESOTA STATE COLLEGES AND UNIVERSITIES

If your answer is "NO", proceed to Number 3. If your answer is "Yes", your bid will be rejected unless your firm or business has a Certificate of Compliance issued by the State of Minnesota, Commissioner of Human Rights, or has submitted an affirmative action plan to the Commissioner of Human Rights for approval by the time the bids are due.

2.      Please check one of the following statements:

Yes _____ we have a current Certificate of Compliance that has been issued by the State of Minnesota, Commissioner of Human Rights. (Include a copy of your certificate with your bid.)

No _____ we do not have a Certificate of Compliance, however we submitted an affirmative action plan to the State of Minnesota, Commissioner of Human Rights for approval on _____. We acknowledge that the Commissioner of Human Rights must approve the plan before any Contract will be executed.

No_____ we have not submitted a plan. (If your plan is not submitted to the Minnesota Department of Human Rights by the time the bids are due, your bid will be rejected.)

PLEASE NOTE: Minnesota responders needing certification must have a certificate issued by the Minnesota Department of Human Rights. Affirmative Action plans approved by the Federal government, a county, or a municipality must still be reviewed and approved by the Minnesota Department of Human Rights for a certificate to be issued.

3.      Have you employed more than 40 full-time employees on a single working day during the previous 12 months in the state where you have your primary place of business and that primary place of business is outside the State of Minnesota, but within the United States?

YES _____     NO x ___

If your answer is "Yes", you may achieve compliance with the Human Rights Act by certifying that you are in compliance with Federal Affirmative Action requirements. If your answer is "No" to both this question and to Number 1, you are not subject to the Minnesota Human Rights Act Certification requirement.

4.      Please check one of the following statements:

YES _____ Although we do not now meet the requirements to answer yes in Number 3, we have a previously issued, but current Certificate of Compliance issued by the Minnesota Department of Human Rights. (Include a copy of your certificate with your bid.)

YES_____ We are in compliance with any applicable Federal Affirmative Action

SECTION 00 41 13

**MINNESOTA STATE COLLEGES AND UNIVERSITIES**

requirements.

NO _____ We cannot certify that we are in compliance with Federal Affirmative Action requirements.

**(11) EQUAL PAY CERTIFICATION OF COMPLIANCE: REQUIRED FOR BIDS SUBMITTED IN EXCESS OF $500,000.00**

1. Have you employed more than 40 full-time employees within Minnesota or state where business has its primary place of business on a single working day during the previous 12 months?

   _____ YES _____ NO

   If your answer is "Yes", your bid will be rejected unless your firm or business has an Equal Pay Certificate of Compliance issued by Minnesota Department of Human Rights at the time the bids are due.

2. Please check one of the following statements:

   YES _____ we have a current Equal Pay Certificate of Compliance that has been issued by Minnesota Department of Human Rights. (Include a copy of your certificate with your bid.)

   NO _____ I certify that our firm is exempt and we have not employed more than 40 full-time employees on a single working day in one state during the previous 12 months.

COMPANY NAME

Louhi & Kivela-Masonry Inc.
(Insert Company Name)

By: Michael Louhi                          By: _____
(Print or Type)                                  (Print or Type)
Signature: _Michael Louhi_                 Signature: _____

Title: _____CFO_____            Title: _____

Date: ___12/13/2017_____            Date: _____

Company's Official Address:  4074 N Salmi Road

Hibbing, MN 55746

Company's Telephone Number:  218-262-4775

Company's Facsimile Number:  218-262-4775

Company's E-mail Address:  loukiv@qwestoffice.net

**END OF SECTION**



**Tanner Locke**
Field Claims Representative

THE CINCINNATI
INSURANCE COMPANIES

The Cincinnati Insurance Company • The Cincinnati Indemnity Company
The Cincinnati Casualty Company • The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

January 26, 2021

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

ATTN CLAIM DEPARTMENT               ATTN LIABILITY CLAIMS
West Bend Mutual Insurance           Louhi & Kivela Masonry
1900 S 18th Ave                      4074 N Salmi Road
West Bend, WI 53095                  Hibbing, MN 55746

RE:   YOUR INSURED:      Louhi & Kivela Masonry
      YOUR POLICY NO.:   327705 & 1331363
      YOUR CLAIM NO.:    Unknown
      OUR INSURED:       Max Gray Construction Inc.
      OUR CLAIM NO.:     2680513
      DATE OF LOSS:      03/14/2019
      CLAIMANT:          Thomas Breiwick

Dear Sir or Madam:

Please accept this letter as our formal notice of tender for indemnification and defense and additional
insured status for the above claim for our insured Max Gray Construction Inc. ("Max Gray") and the
project Owner, MN State Colleges & Universities ("Owner").

Our investigation indicates Louhi & Kivela Masonry ("L&K or Subcontractor") was subcontracted by our
insured, Max, for a project at 1515 East 25th Street, Hibbing MN 55746. While L&K was performing
work at this location L&K employee, Thomas Breiwick, slipped and fell on snow/ice and sustained
serious injuries.

Max Gray was the general contractor on the project. In a contract between Max Gray and L&K dated
December 20, 2017, L&K promised to indemnify and hold harmless Max Gray and Owner for claims, etc,
arising out of or resulting from the performance of L&K's work.

In addition, Max Gray and Owner was required to be named as an additional insured to L&K's liability
policies with L&K's insurance to be primary to any liability insurance of Max Gray and Max Gray's
liability insurance is excess and non-contributing as to the above.

Max Gray has a Subcontractor Agreement with your policyholder. The contract includes, in part, the
following language:

*5. Insurance Required: A certificate of insurance must be received in our office prior to the start of work
and before payment will be made. The Certificate should include all of the following:*

**P. O. Box 834, St. Cloud MN 56302**
Tanner_locke@cinfin.com • Voice 320-406-7537  Fax 888-817-6882

Exhibit C

- *Max Gray Construction, Inc. is to be named as an additional insured on a Primary basis for ongoing and completed operations on ISO forms CG 2010 0704 and CG 2037 0704 (or substitute forms that are equivalent)*
- *General Liability coverage with minimum limits of $1,000,000 per occurrence/ $2,000,000 aggregate, including a per project General Aggregate limit;*
- *A waiver of subrogation in favor of Max Gray Construction, Inc*
- *Auto Liability limits shall be written with a minimum of $1,000,000 combined single limit;*
- *Worker's Compensation and Employer's Liability minimum limits shall be no less than $500,000/ $500,000/$500,000.*
- *These insurance Requirements shall be maintained for a minimum of 2 years after completion of the project.*

*5a. Umbrella Liability or Excess Liability limit shall be included with a minimum limit of $1,000,000.*

*INDEMNIFICATION*
*5b. The work performed by Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from Contractor), affiliated companies of Contractor, their partners, joint ventures, representatives, members, designees, officers, directors, shareholders, employees, agents, successors, and assigns (Indemnified Parties), from and against any and all claims for bodily injury, death or damage to property, demands, damages, actions, causes of action, suits, losses, judgments, obligations, and any liabilities, costs and expenses (including but not limited to investigative and repair costs, attorneys' fees and costs, and consultants' fees and costs) ("Claims") which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any acts or omissions, negligent or willful misconduct of Subcontractor, its employees or agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified parties;*

*Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is enforce, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable laws.*

Under the terms of the Subcontract Agreement our insured, Max Gray Construction Inc, AND the project Owner, MN State Colleges & Universities, are additional insureds under the Louhi & Kivela policy on a primary, non-contributory basis. Full Indemnification required. The contract carries a waiver of subrogation.

Additionally, the Certificate of Liability Insurance lists our insured, Max Gray Construction Inc, AND the project Owner, MN State Colleges & Universities, as additional insureds under the Louhi & Kivela Masonry's policy on a primary, non-contributory basis. Waiver of subrogation applies on General Liability and Workers Compensation.

Consequently, on behalf of our policyholder, Max Gray Construction Inc., and on behalf of the property Owner, MN State Colleges & Universities, we hereby tender the defense and indemnity to you regarding any claims, suits, etc. arising from the above-referenced accident to Louhi & Kivela Masonry and their insurer West Bend Mutual Insurance Companies. Also, Max Gray Construction Inc and the Owner hereby seek additional insured status under West Bend Mutual's liability policies issued to Louhi & Kivela Masonry.

Time is of the essence. Please immediately acknowledge and accept Max Gray and the Owner's tender of defense and indemnity and additional insured requests.

Sincerely,

Tanner Locke,
Field Claims Representative

enclosure:    Lawsuit, Subcontract Agreement, Certificate of Insurance

cc:    Max Gray Construction, Inc. w/out enclosures
      North Risk Partners, LLC w/out enclosures


**WEST BEND**
A MUTUAL INSURANCE COMPANY®

THE SILVER LINING®

LEGAL DEPARTMENT
ATTORNEYS AT LAW
CHRISTOPHER C. ZWYGART
MICHAEL M. CARTER
FREDERICK B. KAFTAN
THERESE M. SIZER
JENNIFER A. SEIDLER
BRIAN R. KESSLER
MATTHEW E. CARLTON
JOSEPH J. SARMIENTO
KAITLYN J. JOHANNES

February 8, 2021

Tanner Locke
The Cincinnati Insurance Companies
P.O. Box 834
St. Cloud, MN 56302
Tanner_locke@cinfin.com

SENT VIA EMAIL

Re:   *Breiwick v. Hibbing Community College, et al.*
      Case No. Not Provided, Circuit Court of Itasca County, Minnesota ("Breiwick Suit")
      West Bend Claim No.: AN13483

Dear Mr. Locke:

   I am the attorney at West Bend Mutual Insurance Company ("WBMI") handling the tender of the Breiwick Suit to WBMI and WBMI's insured Louhi & Kivela Masonry, Inc. ("L&K"). WBMI issued Policy No. 1327705 08 to L&K for the policy period 5/1/18-5/1/19 (the "WBMI Policy"). After reviewing the allegations in the Breiwick Suit, the WBMI Policy, the Subcontract, and speaking with the insured, it does not appear that L&K owes Max Gray Construction Inc. ("Max Gray") or MN State Colleges & Universities ("Owner"), named in the Breiwick Suit as Hibbing Community College, any obligation to defend/indemnify. Further, it does not appear that Max Gray or Owner qualify for additional insured coverage under the WBMI Policy. Once you have reviewed this letter, I would be happy to discuss this evaluation with you.

<u>Alleged Underlying Facts</u>

   WBMI sets forth the following facts based on the allegations in the Complaint. By setting forth these allegations, WBMI is in no way admitting the truth of any of the allegations.

   Breiwick – L&K's employee – alleges that on March 14, 2019, he was working onsite at Hibbing Community College when he "slipped on a snow-covered plastic tarp that was covering plywood pallets." He alleges that he was injured as a result of the slip/fall and seeks damages from Max Gray and Owner. In particular, Breiwick alleges that his injuries were the result of Max Gray/Owner's negligence and does not allege any negligence on behalf of L&K:

Exhibit D

> That, these injuries were a direct result of [Max Gray's and/or Owner's] inattention, carelessness, and negligence – particularly regarding the maintenance and supervision of the snow-covered tarp covering the aforementioned pallets.

### The Tender

On January 26, 2021, you tendered the Breiwick Suit on behalf of the Defendants for defense and indemnity to L&K and also seek defense and indemnity for Defendants as additional insureds under the WBMI Policy.

With respect to defense and indemnity from L&K, your tender refers to Section 5b. of the Subcontract, which provides the following:

> The Work performed by the Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless [Max Gray and Owner] . . . from and against any and all claims for bodily injury . . . which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any act or omissions, negligent or willful misconduct of Subcontractor, its employees or agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated to indemnify or defend [Max Gray/Owner] for claims found to be due to the sole negligence or willful misconduct of Indemnified parties.

Your tender also refers to Section 5. of the Subcontract, which provides:

> Insurance required: A certificate of insurance must be received in our office prior to the start of work and before payment will be made. The Certificate should include the following:
> - Max Gray Construction is to be named as an additional insured on a primary basis for ongoing and completed

operations on ISO forms CG 2010 0704 (or substitute forms that are equivalent)

- General Liability coverage with minimum limits of $1,000,000 per occurrence / $2 million aggregate, including a per project General Aggregate limit.
- A waiver of subrogation in favor of Max Gray Construction Inc.

***

## WBMI Additional Insured Policy Language

The WBMI Policy contains an ADDITIONAL INSURED – CONTRACTOR'S BLANKET endorsement, which provides:

A. WHO IS AN INSURED (Section II) is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

The written contract or written agreement must be:

1. Currently in effect or becoming effective during the term of this policy; and

2. Signed by all parties to the written contract or written agreement prior to the "bodily injury," "property damage," "personal injury and advertising injury."

B. The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by:

a. Your premises; or

b. Your negligent acts or omissions in connection with "Your work" for that additional insured.

3

However:

a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the written contract or written agreement to provide such additional insured.

***

### Analysis

As an initial matter, it does not appear that L&K owes Max Gray or Owner a duty to defend, indemnify, hold harmless, etc. against the Breiwick Suit. Minnesota courts permit "indemnity among joint tortfeasors only in 'exceptional and limited circumstances'" and broadly disfavor and narrowly construe such provisions. *Dewitt v. London Rd. Rental Ctr., Inc.*, 910 N.W.2d 412, 416-17 (Minn. 2018). Here, a Minnesota court would narrowly construe Paragraph 5b. (which Max Gray drafted) and find that L&K did not clearly and expressly agree to defend/indemnify Max Gray or Owner for their own negligence. Paragraph 5b. is also only enforceable to the extent of L&K's negligent acts or omissions and cannot, by statute, be read to obligate L&K to defend/indemnify Max Gray or Owner for their own negligent acts or omissions. *See* Minn. Stat. § 337.02.

However, even if L&K did make such an agreement and it was enforceable, the Breiwick Suit makes *no* allegations that L&K acted negligently. Further, after speaking with the insured, the plywood and its snow-covered tarp on which Breiwick allegedly slipped belonged to Max Gray and had nothing to do with L&K. Max Gray was responsible for maintaining the tarp and Breiwick alleges that Max Gray and Owner, *not* L&K, was/were negligent in that regard. In other words, Breiwick alleges that the sole negligence of Max Gray and/or Owner were the cause of his injuries. As such, L&K has no duty to defend or indemnify Max Gray and/or Owner against the Breiwick Suit.

Further, contrary to your letter, there is nothing in the Subcontract requiring L&K to add Owner as an additional insured under any insurance policies. Paragraph 5. makes reference only to Max Gray. As such, Owner is not an additional insured under the WBMI Policy.

4

Further, the Subcontract, again, drafted by Max Gray, does not actually require insurance or L&K to add anyone as an additional insured to any insurance policy of L&K. The Subcontract requires L&K to provide a certificate of insurance, not actually to purchase insurance or to add anyone as an additional insured to an insurance policy. Certificates of insurance are not insurance and the certificates of insurance you provided *clearly* indicate in multiple locations that the certificate itself is not insurance and in no way alters the WBMI Policy.

But, even if the Subcontract required that Max Gray and/or Owner be added as additional insureds, such additional insured coverage is not limitless and neither would qualify as an additional insured here. The Additional Insured endorsement in the WBMI Policy provides that a party is an additional insured only for "bodily injury . . . caused in whole or in part, by . . . [L&K's] negligent acts or omissions in connection with [L&K's work] for that additional insured." But the endorsement also provides that its coverage "only applies to the extent permitted by law." And Minnesota law—Minn. Stat. § 337.05, subd. 1(b)—provides that "[a] provision that requires a party to provide insurance coverage to one or more other parties, including third parties, for the negligence or intentional acts or omissions of any of those other parties, including third parties, is against public policy and is void and unenforceable." Paragraph 5 is therefore against public policy and void and unenforceable if it requires coverage for Max Gray and/or Owner's negligence or intentional acts or omissions.

Section 337.05, subd. 1(b) suggests that an overly broad insurance provision is wholly void and unenforceable. But even if enforceable to require additional insured coverage to the extent permitted by law—*i.e.*, to the extent of L&K's negligent acts or omissions—there are *no* allegations that L&K was in any way negligent. In fact, the only alleged negligence is that of Max Gray and/or Owner. And, further investigation indicates that indeed Max Gray was responsible for the snow-covered tarp. Thus, because there are no allegations of L&K's negligence, neither Max Gray nor Owner would qualify as an additional insured under the WBMI Policy, as interpreted and applied under Minnesota law.

This letter does not address all bases for which coverage may be excluded under the WBMI Policy—there may be additional bases for disclaiming or limiting coverage. Nor, does this letter address all bases for which L&K does not owe Max Gray or Owner a duty to defend, indemnify, hold harmless, etc. Nothing contained in this letter, nor omitted from this letter, shall be construed as a waiver of any defense to coverage WBMI or L&K may have. Please be advised that all terms, exclusions, conditions, limitations, and definitions of the WBMI Policy remain in full force and effect and are completely reserved. WBMI expressly retains and does

5

not waive any of its rights under the WBMI Policy or in law.  If you have any questions or would like me to consider any additional information, please feel free to contact me at any time.

Very truly yours,

*Electronically signed by Joseph J. Sarmiento*

Joseph J. Sarmiento
Sr. Attorney
1-800-236-5010 - Extension 0148
jsarmiento@wbmi.com

6

# TRIAL GROUP NORTH

### LAW FIRM

March 18, 2022

<u>VIA EMAIL TRANSMISSION</u>

Mr. Michael Louhi, CEO
LOUHI & KIVELA MASONRY
4074 N. Salmi Road
Hibbing, MN 55746

Mr. Joseph J. Sarmiento
Sr. Attorney
WEST BEND MUTUAL INSURANCE
1900 S. 18th Avenue
West Bend, WI 53095
*Jsarmiento@wbmi.com*

RE:   Thomas Breiwick v. Max Gray Construction, et al.
      Court File No.:       69HI-CV-21-374
      West Bend Insured:   Louhi & Kivela Masonry
      West Bend Claim No:  AN13483
      Date of Loss:      03.14.19
      Our File No:       731.025

Dear Mr. Louhi and Mr. Sarmiento:

On behalf of Max Gray Construction, Inc. and its insurer, Cincinnati Insurance Companies, we are renewing the Tender for indemnification and defense and additional insured status for Max Gray Construction, Inc. ("Max Gray") and the Project Owner, Minnesota State Colleges & Universities ("Owner".)

Our renewed Tender of Defense relates back to the original Tender of Defense submitted to you by Mr. Tanner Locke, Field Claims Representative of Cincinnati Insurance Companies dated January 26, 2021, attached hereto as Exhibit A.

As you are aware, Max Gray was the general contractor on a project at 1515 East 25th Street, Hibbing, MN 55746. Thomas Breiwick has brought a personal injury action against Max Gray and Owner alleging that he slipped and fell on snow/ice and allegedly sustained serious injuries. Mr. Breiwick's alleged injuries are not the result of any act or omission of Max Gray.

Mr. Breiwick was in the course and scope of his employment with Louhi & Kivela Masonry ("LKM" or "Subcontractor") at the time of his alleged injury LKM was subcontracted by our client, Max Gray.

Exhibit E

### STEVEN L. REYELTS

The Contract between Max Gray and LKM dated December 20, 2017 is attached as Exhibit B. In that Contract, LKM promised to indemnify and hold harmless Max Gray and Owner for claims arising out of or resulting from the performance of LKM's work.

In addition, Max Gray and Owner was required to be named as an additional insured to L&K's liability policies with L&K's insurance to be primary to any liability insurance of Max Gray and Max Grays liability insurance is excess and noncontributing as to the above. Max Gray has a Subcontractor Agreement with LKM. The contract includes, in part, the following language:

> 5. Insurance Required: A certificate of insurance must be received in our office prior to the start of work and before payment will be made. The Certificate should include all of the following:
> > • Max Gray Construction. Inc. is to be named as an additional insured on a Primary basis for ongoing and completed operations on ISOforms CG 2010 0704 (or substitute forms that are equivalent) […]
> > • A waiver of subrogation in favor of Max Gray Construction Inc.

The subcontract further provides:

> INDEMNIFICATION
> 5b. The work performed by Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from Contractor), affiliated companies of Contractor, their partners, joint ventures, representatives, members, designees, officers, directors, shareholders, employees, agents, successors, and assigns (Indemnified Parties), from and against any and all claims for bodily injury, death or damage to property, demands, damages, actions, causes of action, suits, losses, judgments, obligations and any liabilities, costs and expenses (including but not limited to investigative and repair costs, attorneys' fees and costs, and consultants' fees and costs) ("Claims") which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any acts or omissions, negligent or willful misconduct of Subcontractor, its employees or agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties. Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

Under the terms of the Subcontract Agreement, Max Gray Construction Inc, and the project Owner, MN State Colleges & Universities, are additional insureds under the Louhi & Kivela Masonry's policy on a primary, non-contributory bases. Full Indemnification required. The contract carries a waiver of subrogation.

Additionally, the Certificate of Liability Insurance lists our client, Max Gray Construction Inc, and the project Owner, MN State Colleges & Universities, as additional insureds under the Louhi & Kivela Masonry's policy on a primary, non-contributory bases. Waiver of subrogation applies on General Liability and Workers Compensation.

Consequently, on behalf of our client, Max Gray Construction Inc., and on behalf of the property owner, MN State Colleges & Universities, we hereby tender the defense and indemnity regarding any claims, suits, etc. arising from the above-referenced accident to Louhi & Kivela Masonry and their insurer West Bend Mutual Insurance Companies. Also, Max Gray Construction Inc and the Owner hereby seek additional insured status under West Bend Mutual's liability policies issued to Louhi & Kivela Masonry.

The Tender of Defense was initially rejected under the theory that Mr. Breiwick's claims were brought only against Max Gray and the Owner. However, as the matter has progressed, it is clear there is fault on the part of LKM.

In this action, Thomas Breiwick has provided Answers to Interrogatories by which he discusses the connection between his injury and his employment with LKM:

> On March 14, 2019, approximately mid-morning, Plaintiff was working on a construction site at Hibbing Community College when, **per his supervisor's instruction,** he began to remove snow off of a mixing station and surrounding area. He slipped on a pile of plywood pallets that had been placed there by Max Gray Construction. The pile of plywood that Plaintiff slipped on was covered with a snow-covered plastic tarp. Plaintiff struck the ground, landing on his tailbone, lower back, and buttock area. (Emphasis provided.)

Mr. Breiwick's actions that resulted in his alleged injury came about upon instructions from his LKM Supervisor. Additionally, Max Gray disputes vigorously that the plywood pallets where Mr. Breiwick allegedly fell were owned or controlled by Max Gray. In fact, this was an area that was utilized by LKM – thus the instruction by LKM to Mr. Breiwick to remove the snow. Max Gray is not aware of any of its employees or staff placing plywood in this area or covering the plywood with a tarp.

Further, Mr. Breiwick provided the following answer to interrogatory:

> 29. State fully and in complete detail all that you contend Max Gray Construction, Inc., Hibbing Community College, or LKM did or failed to do which in any way caused or contributed to the incident.
> RESPONSE: Defendants failed to maintain a safe worksite by negligently placing – or allowing to be placed – a trip/slip-and-fall hazard in the form of stacked

wooden pallets covered in a plastic tarp and covered with snow. No warning indicators were in place and no verbal warnings were issued.

Note that in the above paragraph, the fault of LKM is grouped together with the alleged fault of Max Gray and Owner Hibbing Community College.

In his deposition transcript in the companion Workers Compensation action, Mr. Breiwick describes the fall as follows:

Q. What were you doing when the incident occurred?
A. We were -- me and another laborer, Kevin Zahler, were doing cleanup.
Q. You said Kevin Zahler?
A. I believe that's his name. That's how I say it, Zahler. I couldn't -- Kevin.
Q. When you say "cleanup" -- so what were you two doing for cleanup when the injury occurred?
A. We had previous heavy snow falls. And we were getting ready to start working at this facility again, because we were going from one spot -- one site to another, put it that way. And we had a couple of sites going on. And our job was to go in and organize and get all -- remove all the snow off cubes of block, the mixing station that I ran, get it all cleaned up from snow. Remove the snow and get it so we could function and move around the area. Organize, cleanup anything that was -- that's our job is to keep our area clean and tidy.
Q. So during this process, you fell, correct?
A. Yes.
Q. And can you describe the fall.
A. Yes. We were doing snow cleanup and removal. And one of the -- the supervisor of the job, or the one who runs it, their operator wanted to use our forklift. And so they needed to get our man basket or a cage that was in this parking lot behind my mixing station snowed in, and they were going to leave us their Bobcat to continue cleanup and remove anything. They needed to set a man up in the basket. So in order to get the basket, the forks has got to go down and underneath this cage to hook up securely. And there was snow up around this cage, so me and Kevin Zahler each grabbed a shovel. He was in a different area at that time coming in from the mixing station and walking in between some stuff. I was coming from a different area and we were going to go in and clean out an area so the forklift could come and stab this cage and get it out of there. And because of all of the snow we had, there was just berms of snow everywhere that they pile. Because they don't remove the snow, they just pile it up everywhere. So the quickest way for me to get over to the cage -- Max Gray had some sheets of plywood that was on the ground, maybe 6 inches that were off the ground, and I walked over that plywood, but I wasn't aware because of the snow cover. Underneath them few pieces of plywood, there was more plywood that they had plastic on, but it was snow-covered. So I had just stepped up approximately 6 inches, walked over the dry pieces of wood that someone -- plywood. And when I was stepping off again on the other side, thinking I would just go down on the snow, I stepped down maybe an inch or two and it was just all wet, slushy plastic on another sheet of plywood. And it just kicked me out and threw me up in the air. And I came down landing more on my right side -- my

tailbone right side area. And when I came down on the edge of that plywood, my
forearm, this part -- if I'm saying...

Q. So you're pointing to the right forearm a few inches --

A. Yes. As I fell, it slammed down. And I hit hard enough that through my winter
jacket, it was all bruised. I don't have a problem with it.

The discovery responses by Mr. Breiwick clearly trigger coverage under the Additional Insured –
Contractors Blanket endorsement. The allegations are that Plaintiff has been injured in whole or
in part by his work "per his supervisor's instruction". This is akin to the policy providing coverage
for bodily injury "caused in whole or in part by: your premises or your negligent acts or omissions
in connection with "your work" for that additional insured.

In the instant action, Louhi & Kivela has brought a Motion to dismiss Max Gray's claim for
indemnification. The Court has rejected this attempt to dismiss the claim for indemnification
through its Order and Memorandum dated December 9, 2021, attached hereto as Exhibit C.
Minnesota Courts have enforced indemnity provisions where a subcontractor agrees both to
indemnify for another's negligence and to insure that risk. *Holmes v. Watson-Forsberg Co.*, 488
N.W.2d 473, 475 (Minn. 1992). The *Holmes* Court enforced contractual language requiring
indemnification and insurance for claims including those "for which the [c]ontractor may be or
may be claimed to be, liable." *Id.* at 474. The court in *Holmes* reasoned that "the legislature both
anticipated and approved a long-standing practice in the construction industry by which the parties
to a subcontract could agree that one party would purchase insurance that would protect `others'
involved in the performance of the construction project." *Id.*

The cases decided since *Holmes* show that the specific language employed will determine whether
there is an enforceable agreement to indemnify and insure against another's negligence."
*Christenson v. Egan Companies, Inc.*, No. A09-1539, *unpublished* (Minn. App. 2010). When a
subcontract plainly imposes indemnification and insurance obligations for injuries arising out of
the general contractor's negligence, the Court may enforce the indemnification provision of the
subcontract. *Id.* While it is true that the general rule in Minnesota is to allow indemnity among
joint tortfeasors only in exceptional and limited circumstances, one such circumstance is where
there is an express contract between the parties containing an explicit undertaking to reimburse for
liability of the character involved. *Dewitt v. London Road Rental Center, Inc.*, 910 N.W.2d 412
(Minn. 2018).

Finally, the duty to defend is broader than the duty to indemnify. Should this matter result in any
amount of liability found on the part of LKM, Max Gray's insurer would look to immediately
recoup the costs of defense on this basis.

In conclusion, Max Gray and Hibbing Community College (MN State Colleges & Universities)
are Additional Insureds under the clear language of the policy and as required in the contract with
LKM.

Furthermore, the fault of LKM has caused the injury to the Plaintiff in whole or in part. Therefore,
we demand that you immediately acknowledge and accept the Tender of Defense from Max Gray
and the Owner and provide a defense, indemnity and additional insured status for Max Gray.

Time is of the essence.

Sincerely yours,

Steven L. Reyelts

Paige V. Orcutt
SLR/PVO/jmr
Encs.



THE
**CINCINNATI**
INSURANCE COMPANIES

The Cincinnati Insurance Company • The Cincinnati Indemnity Company
The Cincinnati Casualty Company • The Cincinnati Specialty Underwriters Insurance Company
The Cincinnati Life Insurance Company

**Tanner Locke**
Field Claims Representative

January 26, 2021

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

ATTN CLAIM DEPARTMENT
West Bend Mutual Insurance
1900 S 18th Ave
West Bend, WI 53095

ATTN LIABILITY CLAIMS
Louhi & Kivela Masonry
4074 N Salmi Road
Hibbing, MN 55746

RE:   YOUR INSURED:        Louhi & Kivela Masonry
      YOUR POLICY NO.:     1327705 & 1331363
      YOUR CLAIM NO.:      Unknown
      OUR INSURED:         Max Gray Construction Inc.
      OUR CLAIM NO.:       3680513
      DATE OF LOSS:        03/14/2019
      CLAIMANT:            Thomas Breiwick

Dear Sir or Madam:

Please accept this letter as our formal notice of tender for indemnification and defense and additional insured status for the above claim for our insured Max Gray Construction Inc. ("Max Gray") and the project Owner, MN State Colleges & Universities ("Owner").

Our investigation indicates Louhi & Kivela Masonry ("L&K or Subcontractor") was subcontracted by our insured, Max, for a project at 1515 East 25th Street, Hibbing MN 55746. While L&K was performing work at this location L&K employee, Thomas Breiwick, slipped and fell on snow/ice and sustained serious injuries.

Max Gray was the general contractor on the project. In a contract between Max Gray and L&K dated December 20, 2017, L&K promised to indemnify and hold harmless Max Gray and Owner for claims, etc. arising out of or resulting from the performance of L&K's work.

In addition, Max Gray and Owner was required to be named as an additional insured in L&K's liability policies with L&K's insurance to be primary to any liability insurance of Max Gray and Max Gray's liability insurance is excess and noncontributing as to the above.

Max Gray has a Subcontractor Agreement with your policyholder. The contract includes, in part, the following language:

*5. Insurance Required. A certificate of insurance must be received in our office prior to the start of work and before payment will be made. The Certificate should include all of the following:*

P. O. Box 834, St. Cloud MN 56302
Tanner_locke@cinfin.com • Voice 320-406-7537  Fax 888-857-6882

**Exhibit A**

- Max Gray Construction, Inc. is to be named as an additional insured on a Primary basis for ongoing and completed operations on ISO forms CG 2010 0704 and CG 2037 0704 (or substitute forms that are equivalent)
- General Liability coverage with minimum limits of $1,000,000 per occurrence/ $2,000,000 aggregate, including a per project General Aggregate limit.
- A waiver of subrogation in favor of Max Gray Construction, Inc.
- Auto Liability limits shall be written with a minimum of $1,000,000 combined single limit.
- Worker's Compensation and Employer's Liability minimum limits shall be no less than $500,000/ $500,000/ $500,000.
- These insurance Requirements shall be maintained for a minimum of 2 years after completion of the project.

5a. Umbrella Liability or Excess Liability limit shall be included with a minimum limit of $1,000,000.

**INDEMNIFICATION**

5b. The work performed by Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from Contractor), affiliated companies of Contractor, their partners, joint ventures, representatives, members, designees, officers, directors, shareholders, employees, agents, successors, and assigns (Indemnified Parties), from and against any and all claims for bodily injury, death or damage to property; demands, damages, actions, causes of action, suits, losses, judgments, obligations, and any liabilities, costs and expenses (including but not limited to investigative and repair costs, attorneys' fees and costs, and consultants' fees and costs) ("Claims") which arise or are in any way connected with the Work performed, Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any acts or omissions, negligent or willful misconduct of Subcontractor, its employees or its agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of indemnified parties.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are Indemnified hereunder are fully and finally barred by applicable laws.

Under the terms of the Subcontract Agreement our insured, Max Gray Construction Inc. AND the project Owner, MN State Colleges & Universities, are additional insureds under the Louhi & Kivela Masonry's policy on a primary, non-contributory bases. Full Indemnification required. The contract carries a waiver of subrogation.

Additionally, the Certificate of Liability Insurance lists our insured, Max Gray Construction Inc. AND the project Owner, MN State Colleges & Universities, as additional insureds under the Louhi & Kivela Masonry's policy on a primary, non-contributory bases. Waiver of subrogation applies on General Liability and Workers Compensation.

P. O. Box 634, St. Cloud MN 56302
Tanner_locke@clnfin.com • Voice 320-406-7537  Fax 888-857-6882 ;

Consequently, on behalf of our policyholder, Max Gray Construction Inc., and on behalf of the property Owner, MN State Colleges & Universities, we hereby tender the defense and indemnity to you regarding any claims, suits, etc. arising from the above-referenced accident to Louhi & Kivela Masonry and their insurer West Bend Mutual Insurance Companies. Also, Max Gray Construction Inc and the Owner hereby seek additional insured status under West Bend Mutual's liability policies issued to Louhi & Kivela Masonry.

Time is of the essence. Please immediately acknowledge and accept Max Gray and the Owner's tender of defense and indemnity and additional insured requests.

Sincerely,

Tanner Locke,
Field Claims Representative

enclosure:     Lawsuit, Subcontract Agreement, Certificate of Insurance

cc:     Max Gray Construction, Inc. w/out enclosures
         North Risk Partners, LLC w/out enclosures

Electronically Served
12/10/2021 4:12 PM
St. Louis County, MN

69HI-CV-21-374

Filed in District Court
State of Minnesota

December 9, 2021

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF ST. LOUIS                              SIXTH JUDICIAL DISTRICT

---

Thomas Breiwick,                                 File No. 69HI-CV-21-374

                    Plaintiff,                   **ORDER**

    v.

Hibbing Community College and
Max Gray Construction, Inc.,

                    Defendants,

and

Max Gray Construction, Inc.,

                    Third-Party Plaintiff

    v.

Louhi & Kivela Masonry, Inc.,

                    Third-Party Defendant

---

        The above-entitled matter came before the court on the September 15, 2021, upon

Third-Party Defendant Louhi & Kivela Masonry, Inc.'s ("LKM") Motion to Dismiss for Failure

to State a Claim pursuant to Rule 12.02 (e) of the Minnesota Rules of Civil Procedure.

        Based upon all the files, records, and proceedings herein, upon the memoranda submitted,

and upon the arguments of counsel, the court hereby makes the following:

                            FINDINGS OF FACT

1. Plaintiff Thomas Breiwick commenced an action against Max Gray Construction, Inc.

    ("Max Gray") related to injuries allegedly at a worksite at Hibbing Community College in

    Hibbing, Minnesota.

Exhibit C

2. Max Gray was performing said contracting work utilizing the assistance of subcontractor LKM, who it had entered into a subcontractor agreement prior to Plaintiff being injured.

3. The contract between LKM and Max Gray contained an indemnification provision.

4. Max Gray commenced a third-party action against LKM for indemnification pursuant to the subcontract. In its Third-Party Complaint, Max Gray alleges that Plaintiff Thomas Brejwick was an employee of LKM, that at the time of the injury was under the direction of LKM, and that the injuries and damages sustained were as a result of negligence on the part of LKM.

5. In the present motion before the Court, LKM asks that the court dismiss Max Grey's claim against LKM arguing that the indemnification provision in the subcontract between Max Gray and LKM is unenforceable pursuant to Minnesota Statutes, sections 337.02 and 337.05.

6. LKM additionally argues that the subcontract's indemnification provision is ambiguous, and that the Court should declare the indemnification provision unenforceable pursuant to the well-established precedent that ambiguities in agreements must be resolved against the drafter of the agreement.

7. Clause 5b of the subcontract states:

## INDEMNIFICATION

The Work performed by the Subcontractor shall be at the risk of the Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall indemnify, defend (at Subcontractor's sole expense) and hold harmless Contractor, the Owner (if different from. Contractor), affiliated companies of Contractor, their partners, joint ventures, representatives, members, designees, officers, directors, shareholders, employees, agents, successors, and assigns (Indemnified Parties), from and against any and all claims for bodily injury, death or damage to property, demands, damages, actions, causes of action, suits, losses, judgments, obligations and any liabilities, costs and expenses (including but not limited to investigative and repair costs, attorneys' fees and costs, and consultants' fees and costs) ("Claims") which arise or are in any way connected with the Work performed. Materials furnished, or Services provided under this Agreement by Subcontractor or its agents. These indemnity and defense obligations shall apply to any acts or omissions, negligent or willful misconduct of Subcontractor, its employees or

agents, whether active or passive. Said indemnity and defense obligations shall further apply, whether or not said claims arise out of the concurrent act, omission, or negligence of the Indemnified Parties, whether active or passive. Subcontractor shall not be obligated-to indemnify and defend Contractor or Owner for claims found to be due to the sole negligence or willful misconduct of Indemnified Parties.

Subcontractor's indemnification and defense obligations hereunder shall extend to Claims occurring after this Agreement is terminated as well as while it is in force, and shall continue until it is finally adjudicated that any and all actions against the Indemnified Parties for such matters which are indemnified hereunder are fully and finally barred by applicable Laws.

8. Max Gray contends that the enforceability of a construction contract's indemnification provision requires a determination of fault in the case and dismissal is premature as discovery is ongoing.

9. That any Finding of Fact that can be construed as a Conclusion of Law is hereby incorporated as such.

Based on the foregoing Findings of Fact, the court issues the following:

## CONCLUSIONS OF LAW

1. Minnesota Rules of Civil Procedure, Rule 12.02 (e) authorizes a motion to dismiss for failure to state a claim upon which relief may be granted. When a complaint fails to state a claim upon which relief may be granted, dismissal of the claim is appropriate. Martens v. Minn. Min. & Mfg. Co., 616 N.W.2d, 732, 739 (Minn. 2000).

2. In determining the propriety of a motion to dismiss, the Court accepts as true the facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. Hansen v. U.S. Bank Nat'l Ass'n, 934 N.W.2d 319, 325 (Minn. 2019); Abel v. Abbott Northwestern Hospital, 947 N.W.2d 58 (Minn. 2020).

3. A claim may only be dismissed if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist that support the relief requested. Walsh v. U.S. Bank, N.A., 851 N.W.2d 598 (Minn. 2014).

4. In reviewing cases dismissed for failure to state claim upon which relief can be granted, the only question is whether the complaint set forth a legally sufficient claim for relief. It is immaterial to consideration whether plaintiff can prove facts alleged. Elzie v. Commissioner of Public Safety, 298 N.W.2d 29 (Minn. 1980).

5. Minnesota Statutes, section 337.02 states:

   337.02 UNENFORCEABILITY OF CERTAIN AGREEMENTS.

   An indemnification agreement contained in, or executed in connection with, a building and construction contract is unenforceable except to the extent that: (1) the underlying injury or damage is attributable to the negligent or otherwise wrongful act or omission, including breach of a specific contractual duty, of the promisor or the promisor's independent contractors, agents, employees, or delegates; or (2) an owner, a responsible party, or a governmental entity agrees to indemnify a contractor directly or through another contractor with respect to strict liability under environmental laws.

6. Minnesota Statutes, section 337.05, subdivision 1 states:

   Except as otherwise provided in paragraph (b), sections 337.01 to 337.05 do not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others.(b) A provision that requires a party to provide insurance coverage to one or more other parties, including third parties, for the negligence or intentional acts or omissions of any of those other parties, including third parties, is against public policy and is void and unenforceable.(c) Paragraph (b) does not affect the validity of a provision that requires a party to provide or obtain workers' compensation insurance, construction performance or payment bonds, or project-specific insurance, including, without limitation, builder's risk policies or owner or contractor-controlled insurance programs or policies.

7. The Court in determining the propriety of the motion to dismiss at the present state must accept as true an inference that the underlying injury or damage is attributable to the negligence or otherwise wrongful conduct of LKM, and that Max Gray's claim is not for indemnification of Max Gray for injury or damage that was result of sole negligence or willful misconduct of Max Gray. As such, the Court concludes that the indemnification clause is not unenforceable under Minnesota law and a motion to dismiss is not warranted pursuant to Rule 12.02 (e) of the Minnesota Rules of Civil Procedure and the case law interesting those rules.

69HI-CV-21-374

ORDER

1.  Third-Party Defendant Louhi & Kivela Moasontry, Inc.'s Motion to Dismiss is **Denied**.

BY THE COURT:

Pattni, Bhupesh
Dec 9 2021 1:11 PM

**Hon. Bhupesh Pattni**
**Judge of District Court**



THE SILVER LINING®

**LEGAL DEPARTMENT**
**ATTORNEYS AT LAW**
CHRISTOPHER C. ZWYGART
MICHAEL M. CARTER
FREDERICK B. KAFTAN
THERESE M. SIZER
JENNIFER A. SEIDLER
BRIAN R. KESSLER
MATTHEW E. CARLTON
JOSEPH J. SARMIENTO
KAITLYN J. JOHANNES

August 1, 2022

Steven L. Reyelts
Trial Group North
800 Lonsdale Building
302 West Superior Street
Duluth, MN 55802
reyelts@trialgroupnorth.com

**SENT VIA EMAIL**

Re:  *Breiwick v. Hibbing Community College, et al.* District Court of Itasca, Minnesota ("Breiwick Suit")
West Bend Claim No.: AN13483
West Bend Insured: Louhi & Kivela Masonry, Inc. ("L&K")

Dear Mr. Reyelts:

Please allow this letter to serve as a response to your renewed tender on behalf of Max Grey Construction, Inc. ("Max Grey") and its insurer Cincinnati Insurance Company ("Cincinnati"). Based on the allegations, the testimony, the Max Grey-L&K contract ("Subcontract"), and the West Bend Policy, we continue to conclude that: (i) there is no additional insured coverage for Max Grey and (ii) L&K has no indemnity obligations to Max Grey for Max Grey's negligence, which is the only negligence at issue here.

**A.  There is no Additional Insured Coverage for Max Grey**

Your renewed tender refers to Section 5. of the Subcontract, which provides:

Insurance required: A certificate of insurance must be received in our office prior to the start of work and before payment will be made. The Certificate should include the following:

- Max Gray Construction is to be named as an additional insured on a primary basis for ongoing and completed operations on ISO forms CG 2010 0704 (or substitute forms that are equivalent)
- General Liability coverage with minimum limits of $1,000,000 per occurrence / $2 million aggregate, including a per project General Aggregate limit.
- A waiver of subrogation in favor of Max Gray Construction Inc.

***

As noted in our prior letter, there is nothing in the Subcontract requiring that Owner be added as an additional insured. Further, the Subcontract, which Max Grey drafted and against whom all ambiguities are construed, does not require that L&K add Max Grey as an additional insured. All

Exhibit F

the Subcontract requires is that L&K provide a certificate of insurance. As you know certificates of insurance are not insurance and do not change the terms of the insurance policy which they reference (see the bolded and all-caps disclaimers at the top and middle of the certificate of insurance included in your tender letter). So, nothing in the Subcontract actually requires that Max Grey be added as additional insured.

Even assuming that Max Grey was an additional insured on the West Bend Policy, Max Grey would only be an additional insured with respect to L&K's negligence. The additional insured endorsement provides:

    **A. WHO IS AN INSURED (Section II)** is amended to include as an additional insured any person or organization whom you are required to add as an additional insured on this policy under a written contract or written agreement.

    The written contract or written agreement must be:

    **1.** Currently in effect or becoming effective during the term of this policy; and

    **2.** Signed by all parties to the written contract or written agreement prior to the "bodily injury," "property damage," "personal injury and advertising injury."

    **B.** The insurance provided to the additional insured is limited as follows:

    **1.** That person or organization is only an additional insured with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by:

        **a.** Your premises; or

        **b.** Your negligent acts or omissions in connection with "Your work" for that additional insured.

You retender letter claims:

The discovery responses by Mr. Breiwick clearly trigger coverage under the Additional Insured – Contractors Blanket endorsement. The allegations are that Plaintiff has been injured in whole or in part by his work "per his supervisor's instruction". This is akin to the policy providing coverage for bodily injury "caused in whole or in part by: your premises or your negligent acts or omissions in connection with "your work" for that additional insured.

2

No one contends that this injury was at L&K's premises. Further, it is a gross mischaracterization to claim that Mr. Breiwick acting "per his supervisor's instruction" means that Mr. Breiwick's injuries were caused, even in part, by L&K's *negligence*. First of all, Mr. Breiwick testified that he did what he did because of *Max Grey's* directions, not L&K's. Second, there is not a single allegation that any "the instruction" from L&K (of which we are not aware) was negligent. And, Mr. Breiwick's injuries were not caused by any instruction from L&K, but by the slippery plastic atop the plywood – all of which was placed and maintained by Max Grey (or perhaps someone else, but in no instance is there any indication it was placed there by L&K). Therefore, because there is nothing indicating that Mr. Breiwick's injuries were caused by any negligence of L&K, the additional insured endorsement is not even arguably triggered.

Furthering this point, the additional insured endorsement provides:

> **B.** The insurance provided to the additional insured is limited as follows:
>
> ***
>
> **3.** Except when required by written contract or written agreement, the coverage provided to the additional insured by this endorsement does not apply to:
>
> ***
>
> **b.** "Bodily injury" or "property damage" arising out of acts or omissions of the additional insured other than in connection with the general supervision of "your work."
>
> ***

So, in other words, Max Grey is not an additional insured for its own negligence. Further, again, Mr. Breiwick's allegations and testimony claim that he slipped and fell because of the slippery plastic covering the plywood he was walking on, which he claims was controlled by Max Grey and has nothing to do with L&K.

In addition, the additional insured endorsement provides that "[t]he insurance afforded to such additional insured only applies to the extent permitted by law[.]" Minn. Stat. § 337.05, subd. 1(b) provides: "A provision that requires a party to provide insurance coverage to one or more other parties, including third parties, for the negligence or intentional acts or omissions of any of those other parties, including third parties, is against public policy and is void and unenforceable." So, again, there can be no additional insured coverage for Max Grey's negligence and the characterization that Mr. Breiwick was working "per his supervisor's instruction" constitutes negligence is spurious at best.

3

As noted by the Minnesota Supreme Court, an additional insured provision such as the one contained in the West Bend Policy[1] is "plainly a vicarious liability provision." *Eng'g Cosntr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 710 (Minn. 2013). Mr. Breiwick's claims against Max Grey are not for Max Grey's vicarious liability for L&K, but for Max Grey's own negligence. Max Grey is not an insured under the West Bend Policy.

## B. The Indemnification Provision in the Subcontract Is Void

Max Grey's claim that it is entitled to indemnity from L&K under the indemnity provision in Paragraph 5b. is meritless and relies on cases decided prior to the change in Minnesota statute. In particular, Max Grey relies on *Holmes v. Watson-Forsberg Co.*, 488 N.W.2d 473, 475 (Minn. 1992), arguing:

> The Holmes Court enforced contractual language requiring indemnification and insurance for claims including those "for which the [c]ontractor may be or may be claimed to be, liable." *Id.* at 474. The court in Holmes reasoned that "the legislature both anticipated and approved a long-standing practice in the construction industry by which the parties to a subcontract could agree that one party would purchase insurance that would protect others' involved in the performance of the construction project." *Id.*

However, Max Grey ignores that the *Holmes* court rested its ruling on a dramatically different version of Minn. Stat. § 337.05 1:

> The characterization of provision 7 as an invalid indemnification agreement is erroneous, not only because it ignores the clear and unambiguous language of the contractual provision which obligates this subcontractor to obtain "general liability insurance coverage and endorsements as will insure the provisions of this paragraph," but also because by operation of Minn. Stat. § 337.05, the legislature itself has approved its use and, for practical purposes, has carved out an exception from the general prohibition contained in section 337.02. Minn. Stat. § 337.05, subd. 1 provides:
>
> > Sections 337.01 to 337.05 do not affect the validity of agreements whereby a promisor agrees to provide specific insurance coverage for the benefit of others.
>
> In our view, the legislature both anticipated and approved a long-standing practice in the construction industry by which the parties to a subcontract

---

[1] Actually, the provision at issue in *Bolduc* was much broader than the one contained in the West Bend Policy. It merely required that the damages be "caused by acts or omissions of [Bolduc] in the performance of '[its] work' to which the 'written contract requiring insurance' applies," whereas the West Bend Policy specifically requires L&K's negligence.

4

could agree that one party would purchase insurance that would protect "others" involved in the performance of the construction project.

That legislative approval, however, is now gone. The statute now provides: "A provision that requires a party to provide insurance coverage to one or more other parties, including third parties, for the negligence or intentional acts or omissions of any of those other parties, including third parties, is against public policy and is void and unenforceable." So, the conceptual underpinnings of *Holmes* are now gone. *See, e.g., L.H. Bolduc Co.*, 825 N.W.2d 695 at 712 ("We emphasized that our holding comported with the approval by the Legislature of 'a long-standing practice in the construction industry by which the parties to a subcontract could agree that one party would purchase insurance that would protect 'others' involved in the performance of the construction project.'").

Further, the *Bolduc* court noted that the indemnity provision at issue in that case was unenforceable because a jury had determined that the subcontractor was not negligent (and here there is no negligence alleged or evidence against L&K). But, if the indemnity provision came along with a "coextensive insurance agreement," the holding might be different. However, because the court had already determined that the general contractor was not an additional insured (based on language broader than that in the West Bend Policy's additional insured endorsement), the court held the indemnity provision was unenforceable:

> Because Bolduc was not at fault for the pipeline damage, any obligation by Bolduc to indemnify ECI would violate Minn. Stat. § 337.02 unless that obligation was accompanied by a coextensive insurance agreement under Minn. Stat. § 337.05. Having already determined that no insurance coverage is available to ECI under the Travelers' policy with respect to the pipe damage, any indemnification obligation here is not saved by Minn. Stat. § 337.05, subd. 1, because any such obligation is not, based on our conclusion in the first section of this opinion, coextensive with an obligation to insure.

*L.H. Bolduc Co.*, 825 N.W.2d 695 at 713.

Finally, Max Grey's reliance on *Dewitt v. London Road Rental Center, Inc.*, 910 N.W.2d 412 (Minn. 2018) is misplaced. First of all, the indemnity provision at issue in *Dewitt* was not one related to a construction contract and, therefore, not governed by statute. Further, that court held that the indemnity provision did not unequivocally provide that the indemnitor would indemnify for the indemnitee's own negligence and held the provision was unenforceable. Here, while the Paragraph 5b. is different than the provision in *Dewitt*, nothing unequivocally provides that L&K is obligated to indemnify Max Grey for Max Grey's own negligence. Thus, the indemnity provision in the Subcontract is unenforceable.

For all of the above reasons, West Bend denies Max Grey's retender, as well as the prior tender.

5

This letter does not address all bases for which coverage may be excluded under the West Policy–there may be additional bases for disclaiming or limiting coverage. Nor, does this letter address all bases for which L&K does not owe Max Gray or Owner a duty to defend, indemnify, hold harmless, etc. Nothing contained in this letter, nor omitted from this letter, shall be construed as a waiver of any defense to coverage West Bend or L&K may have.  Please be advised that all terms, exclusions, conditions, limitations, and definitions of the West Bend Policy remain in full force and effect and are completely reserved.  West Bend expressly retains and does not waive any of its rights under the West Bend Policy or in law.  If you have any questions or would like me to consider any additional information, please feel free to contact me at any time.

Very truly yours,

*Electronically signed by Joseph J. Sarmiento*

Joseph J. Sarmiento
Sr. Attorney
**1-800-236-5010 - Extension 0148**
jsarmiento@wbmi.com

6

STATE OF MINNESOTA

COUNTY OF ST. LOUIS

DISTRICT COURT

SIXTH JUDICIAL DISTRICT
Case Type: Dec. Action/Civil Misc.

---

Max Gray Construction, Inc. and
Cincinnati Insurance Companies

      Plaintiffs,

v.

West Bend Mutual Insurance, Louhi &
Kivela Masonry, Thomas Breiwick and
AmTrust North America,

      Defendants.

Court File No.
Judge:
To Be Tried in the City of Hibbing

---

## NOTICE AND ACKNOWLEDGMENT OF SERVICE BY MAIL

### NOTICE

**TO:**      **West Bend Mutual Insurance**

The enclosed Summons and Complaint are served pursuant to Rule 4.05 of the Minnesota Rules of Civil Procedure.

You must complete the acknowledgment part of this form and return one (1) copy of the completed form to the sender within twenty-one (21) days.

Signing this Acknowledgment of Receipt is only an admission that you have received the Summons and Complaint and does not waive any other defenses.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

2

If you do not complete and return the form to the sender within twenty-one (21) days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons and Complaint was provided on April 18, 2023.

Dated: April 18, 2023.

TRIAL GROUP NORTH


/s/ Steven L. Reyelts
Steven Reyelts    #91017
800 Lonsdale Building
302 West Superior Street
Duluth, MN 55802
218-722-0073
*reyelts@trialgroupnorth.com*

ACKNOWLEDGMENT OF RECEIPT OF
SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the Summons and of the Complaint in the above-captioned matter at **.


_____
Signature


_____
Relationship to Entity/Authority
to Receive Service of Process


Dated: _____